IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT N. QUILLMAN a/ka/ NICKIE a/k/a ALEXIS a/ka/ HONEBEE,<br><br>**Plaintiff,**<br><br>v.<br><br>**THE ESTATE OF SALEH OBAISI and WEXFORD MEDICAL,**<br><br>**Defendants**. | Case No. 14 cv 09806<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION & ORDER**

Plaintiff Robert N. Quillman brings this civil rights lawsuit under 42 U.S.C. § 1983, against the Estate of Saleh Obaisi, M.D., Deceased ("Dr. Obaisi") and Wexford Medical ("Wexford") (collectively, "Defendants"), for violating her Eighth Amendment rights. Quillman claims she was subject to deliberate indifference by Dr. Obaisi based on the treatment she received for her gender identity disorder ("GID") at Stateville Correctional Center ("Stateville"). For the reasons stated below, the Court grants summary judgment in favor of Defendants and against Quillman. (Dkt. 92).

**BACKGROUND**

**1. Local Rule 56.1 Issues**

As a preliminary matter, Plaintiff's opposition to summary judgment suffers from several Local Rule 56.1 issues that the Court must address. The Seventh Circuit

1

has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Judson Atkinson Candies, Inc. v. Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[T]he Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1."); *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (no abuse of discretion in striking responses consisting of evasive denials and improper argument).

First, Plaintiff failed to include a Local Rule 56.1 statement of facts in opposition to summary judgment. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Local Rule 56.1 "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement" under Local Rule 56.1(b)(3)(C) "of any additional facts that require the denial of summary judgment." *Hall v. Vill. of Flossmoor Police Dep't*, No. 11 C 5283, 2012 U.S. Dist. LEXIS 171439, at *28 n. 8 (N.D. Ill. Dec. 4, 2012) (citing *Chicon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005)); *see also Parvati Corp. v. City of Oak Forest*, No. 8 C 0702, 2012 U.S. Dist. LEXIS 37029, at *1 (N.D. Ill. Mar. 20, 2012) ("Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a *separate* statement of additional facts that requires the denial of summary judgment") (emphasis added); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000)

("Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court."). "The rationale behind this rule is that if the non-movant includes additional facts in only the Local Rule 56.1(b)(3)(B) response, the movant is unfairly deprived of a vehicle under Local Rule 56.1 to dispose those facts because the rule permits movants to reply only to a Local Rule 56.1(b)(3)(C) statement, not a Local Rule 56.1(b)(3)(B) response." *Hall*, 2012 U.S. Dist. LEXIS 171439, at *28 n. 8 (citing *Johnson v. County of Cook*, No. 8 C 2139, 2012 U.S. Dist. LEXIS 98110, at *13 (N.D. Ill. July 16, 2012)); N.D. Ill. LR. 56.1(a)(3). Plaintiff failed to comply with Local Rule 56.1's requirement. Instead of filing a separate statement of facts, Plaintiff included new factual material in her response memorandum. (Dkt. 98, 2-3). In doing so, Plaintiff has denied Defendants an appropriate opportunity to respond to Plaintiff's additional factual material.

More troubling, Plaintiff's Statement of Fact Section in her brief contains exactly one (1) citation to the record. Almost all of the factual material has no citation whatsoever. Defendants request that the Court strike Plaintiff's additional factual matter in its entirety. (Dkt. 99, 2). The Court declines to do so. However, the Court will only consider factual material supported by the record.

Finally, Plaintiff failed to respond to Defendants' Rule 56.1 Statement of Undisputed Facts. Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (citing L.R. 56.1). Thus, the party opposing summary

3

judgment is required to respond to each paragraph submitted by the moving party, otherwise those facts will be deemed admitted. Here, Plaintiff has failed to file any response to Defendants' Rule 56.1 Statement. Accordingly, all of Defendants' factual matter in its Rule 56.1 Statement of Facts is deemed admitted.

## 2. Material Facts

Quillman identifies as a transgender woman.[1] In 2007, Quillman was incarcerated with the Illinois Department of Corrections ("IDOC"). She is currently serving a sixteen-year sentence. (Dkt. 99, 3). Quillman was initially housed in Perry County Jail, where she received hormone therapy of Estradiol and Spironolactone. (*Id*.). Quillman claims that she bore the cost of those medications while in Perry County Jail, but could only afford to do so for five months. (*Id*.).

In May 2014, Quillman was transferred to Stateville. (Dkt. 94 ¶ 9). She remained there until May 2015. (*Id*. at ¶ 19). It is undisputed that Quillman did not receive hormone therapy from 2007 to 2014. (*Id*. at ¶ 15). There is additionally no indication in the medical records that Quillman requested hormone therapy prior to her transfer to Stateville in 2014. (*Id*. at ¶¶ 5, 14). Upon her transfer, Quillman

---

[1] Defendants contest this fact, arguing that Plaintiff's medical records identify Plaintiff as a male and that Plaintiff has been housed in a male correctional center. (Dkt. 99, 3). Defendants additionally refer to Plaintiff with male pronouns throughout their briefing. The premise of this lawsuit is that Plaintiff is a transgender woman seeking treatment. Additionally, Plaintiff's deposition thoroughly discusses Plaintiff's GID, her identification as transgender, Plaintiff's encounters with another physician who identified Plaintiff as transgender, and the fact that Plaintiff was placed into "gender identity groups" (groups intended to treat transgender inmates) by Stateville while incarcerated. (Dkt. 93, Ex. C, 21:4-23:20). Dr. Obaisi's medical notes also identify Quillman as transgender. (Dkt. 93, Ex. B, 15). The Court accordingly relies on Plaintiff's description of her own identity, and refers to Plaintiff with her preferred pronouns.

4

underwent an initial medical screening. (*Id.* at ¶ 13). She voiced no medical complaints to the intake nurse in May 2014. (*Id.*).

There are no medical records indicating that Quillman made comments concerning her QID or requested hormone therapy, until her first appointment with Dr. Obaisi in July 2014. (Dkt. 94 ¶ 14). At that appointment, Dr. Obaisi noted Quillman's GID and that Quillman is transgender, but there is no evidence in the medical notes that Quillman requested hormone therapy at that time. (*Id.*).[2] According to Dr. Obaisi and the medical records, the first discussion of hormone therapy occurred at Quillman's second appointment on September 17, 2014. (*Id.* at ¶ 15).

In IDOC facilities, a GID committee reviews and approves hormone therapy for inmates. (Dkt. 94 ¶ 8). The committee determines which drugs to use as well as the dosage. (*Id.*). The committee is an IDOC, not a Wexford, process, and is chaired by the IDOC medical director. (*Id*). In September 2014, after Quillman's second appointment with Dr. Obaisi, he referred Quillman's information to the IDOC committee. (*Id.* at ¶ 10). The IDOC committee generally approves requests within

---

[2] Quillman claims that she informed Dr. Obaisi of her need for hormone therapy in July 2014, although Quillman provides no citation in support. (Dkt. 98, 3). Quillman further argues that she filed numerous grievances between May 2014 and May 2015 regarding her need for hormone therapy, and claims that these grievances were "repeatedly denied or ignored until July 2014." (*Id.*). In making this assertion, Quillman cites to Exhibit A, which is a compilation of Quillman's grievances. (*Id.*). However, the dates of the grievances are November 13, 2014, December 9, 2014, December 1, 2017, and December 3, 2017. (*Id.* at 6, 8, 9, 11). It is unclear to the Court how these grievances were "ignored until July 2014," when all of the grievances listed were filed after that date. (*Id.* at 3). Additionally, the last two grievances do not concern Stateville or Dr. Obaisi, as Quillman was at another facility at that time (indeed, another facility is listed on those two grievances). (*Id.* at 9, 11). Finally, Quillman received her medication on November 14, 2014, one day after Quillman filed the first grievance. Her grievances was denied as moot because she had already received her medication. (*Id.* at 8).

5

sixty days. (*Id.* at ¶ 29). The committee approved the hormone therapy for Quillman, and Quillman received her medications on November 14, 2014. (*Id.* at ¶ 16). Quillman testified that as a result of the delayed medication and dosing of the medication, she attempted suicide four times while at Stateville. (Dkt. 94, Ex. C, 29:16-24).

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 661 (7th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323; *see also White*, 829 F.3d at 841 (summary judgment warranted where a reasonable juror could not find in favor of the non-moving party "on the evidence submitted in support of and opposition to the motion for summary judgment") (internal citation omitted).

6

## DISCUSSION

Dr. Obaisi moves for summary judgment, arguing that Quillman failed to establish that Dr. Obaisi was deliberately indifferent. "It is well-established that prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

Defendants rely on a Seventh Circuit case from the 1990s to briefly argue that GID is not a serious medical condition and that transgender inmates are not entitled to treatment. (Dkt. 93 at 6) (citing *Maggert v. Hanks*, 131 F.3d 670, 672 (7th Cir. 1997)). First, the cited case actually identifies GID as a serious medical condition. *Maggert*, 131 F.3d at 671. Second, that case suggested that a transgender inmate was not entitled to surgery or hormone therapy based on cost of treatments. *Id*. However, more recent Seventh Circuit cases have determined that transgender inmates are entitled to treatment in the form of hormone therapy. *Mitchell v. Kallas*, 895 F.3d 492, 499-500 (7th Cir. 2018) (transgender inmate survived summary judgment because she provided enough evidence that a prison official's refusal to provide

7

hormone therapy for her gender dysphoria constituted an unconstitutional deprivation); *Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011) (enforcement of Wisconsin statute preventing prison officials from dispensing hormone therapy to transgender inmates constituted deliberate indifference to transgender inmates' serious medical needs, and statute facially violated the Eighth Amendment). Accordingly, the Court finds that Quillman suffers from a serious medical condition, GID, and is entitled to treatment. The Court next determines whether Dr. Obaisi was deliberately indifferent.

Deliberate indifference requires that a defendant actually know about yet disregard a substantial risk of harm to an inmate's health or safety. *Petties*, 836 F.3d at 728. "The standard is a subjective one: the defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw that inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016); *see also Petties*, 836 F.3d at 728. The Supreme Court and the Seventh Circuit have been clear that evidence of medical negligence is not enough to prove deliberate indifference. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Petties*, 836 F.3d at 728 ("[P]laintiffs must show more than mere evidence of malpractice to prove deliberate indifference"); *see also Greeno v. Daley*, 414 F.3d 645. 653 (7th Cir. 2005) ("[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference.").

8

Dr. Obaisi argues Quillman has failed to provide any evidence that Dr. Obaisi was deliberately indifferent, and that the record demonstrates that Dr. Obaisi was responsive to Quillman's medical needs. The Court agrees. The undisputed facts show that Quillman requested hormone therapy on September 17, 2014. Dr. Obaisi presented Quillman's information to the IDOC committee that same month. There is no evidence that Dr. Obaisi refused to provide treatment or delayed treatment. Quillman received her medications on November 14, 2014—within sixty days of her request.[3] The record cannot support an inference of deliberate indifference against Dr. Obaisi.[4]

Quillman appears to make two arguments in response. First, Quillman claims that "[t]his case is not about a disagreement with the medical judgment of Plaintiff's prison medical providers; it is a challenge to the untimely and ineffective administration of the medications Plaintiff desperately required." (Dkt. 98 at 1). Quillman provides little analysis in support of this argument and no citations to the record. In any event, her argument is misguided. Any challenge to the untimely and ineffective administration of Quillman's treatment must be brought against IDOC, the entity responsible for administration of hormone therapy and the hormone therapy decisions. The record is devoid of any evidence suggesting Dr. Obaisi

---

[3] As noted above, the IDOC committee generally took sixty days to process a request for hormone therapy.
[4] Defendants further argue that, to the extent Quillman brings any claims regarding the inadequacy of the hormone dosage, Dr. Obaisi cannot be liable because the dosage decision was made by the IDOC committee, not by Dr. Obaisi. The Court is persuaded by this argument. *See Mitchell v. Kallas*, 895 F.3d 492, 498-99 (7th Cir. 2018) (finding prison doctor not liable under the Eighth Amendment because she did not participate in the GID committee's decision to deny hormone therapy to a transgender inmate).

9

contributed to any delay or "ineffective administration." However, IDOC has been dismissed as a Defendant in this case. (Dkt. 36). The only remaining Defendants are Dr. Obaisi and Wexford. Thus, Plaintiff's argument must fail.

Second, Quillman argues that she can establish deliberate indifference "by showing that 'necessary medical treatment has been delayed for non-medical reasons.'" (Dkt. 98 at 4) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). In this Circuit, the question of whether a delay caused Quillman unnecessary pain is only relevant if Quillman had demonstrated deliberate indifference. Once a plaintiff demonstrates deliberate indifference, she must also demonstrate causation in order to prevail. *See Grayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (stating the elements of a deliberate indifference claim: (1) an objectively serious medical condition, (2) defendants knew of the condition and were deliberately indifferent in treating the plaintiff, and (3) the indifference caused the injury or harm). When a plaintiff alleges the defendant delayed, rather than denied, medical treatment, the Seventh Circuit has required the plaintiff to present "verifying medical evidence" that the delay, and not the underlying condition, caused some harm. *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)).

Here, Quillman has presented no medical evidence to support her claim. However, the Court need not reach this issue as it has already concluded that Quillman failed to demonstrate Dr. Obaisi's deliberate indifference. Even if the Court did reach the causation issue, Quillman's argument would still fail. Quillman has not

provided the requisite "verifying medical evidence" that the delay in treatment caused her any additional harm. She has put forth no medical or expert evidence. The only evidence in Quillman's favor is her own testimony regarding her suicide attempts—testimony her counsel fails to cite. This testimony does not constitute sufficient verifying medical evidence to demonstrate causation and harm.

Quillman also argues that the delay itself constitutes deliberate indifference. The Court disagrees. Once again, Quillman provides little in the way of analysis and no citation to the record. Contrary to Quillman's assertion, the record indicates that Dr. Obaisi was responsive to her medical needs and promptly brought Quillman's request for hormone therapy to the IDOC committee. Even with the sixty-day delay—a delay caused by IDOC, not Dr. Obaisi—these facts do not support an inference that Dr. Obaisi was deliberately indifferent. No reasonable jury could find for Quillman. Accordingly, Dr. Obaisi is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment [92].

E N T E R:

Dated: April 30, 2020

_Mary M Rowland_
MARY M. ROWLAND
United States District Judge